# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# ROCK HILL DIVISION

| | |
|---|---|
| Darvin Cannon Jr., ) | |
| ) | Civil Action No. 0:20-2849-JMC-PJG |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Dept. of Corrections, ) | **MEMORANDUM IN SUPPORT OF** |
| Regional Director Wayne McCabe ) | **MOTION FOR SUMMARY JUDGMENT** |
| individually, and/or in his official capacity ) | |
| as Regional Director of Kershaw ) | |
| Correctional Institution, Warden Kenneth ) | |
| Nelson, individually and/or in his official ) | |
| capacity as Warden of Kershaw ) | |
| Correctional Institution, Associate Warden ) | |
| Joseph Canning III, individually and in his ) | |
| official capacity as Associate Warden of ) | |
| Kershaw Correctional Institution, Associate ) | |
| Warden Kevin Ford individually and in his ) | |
| official capacity as Associate Warden of ) | |
| Kershaw Correctional Institution, and ) | |
| Unknown SCDC Correctional Officer ) | |
| hereinafter referred to as John Doe, ) | |
| individually and/or in his official capacity ) | |
| as an employee of SCDC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## STATEMENT OF THE CASE

The Plaintiff Darvin Cannon Jr. is a former inmate who was incarcerated with the Defendant South Carolina Department of Corrections ("SCDC"). He was released in October

1

2019. The Plaintiff is currently incarcerated in a local detention center in High Point, North Carolina, awaiting trial on an aggravated assault charge. *See*, Plaintiff's Dep., p. 8.

The Plaintiff alleges that he was the victim of an inmate-on-inmate assault occurring on June 18, 2018, at Kershaw Correctional Institution. The Plaintiff claims that he was asleep in his cell during the late morning. He alleges that the institution was on statewide lockdown and that inmates should not have had access to his cell. He could not recall whether his cellmate was in the cell with him. The Plaintiff alleges that he was awoken by four or five inmates whom he was unable to identify. Those inmates attacked him. *See*, Plaintiff's Dep., pp. 28-29. In addition to not knowing the identity of his assailants, the Plaintiff also could not identify any motive that the assailants had. *See*, Plaintiff's Dep., pp. 31-33. The Plaintiff testified in his deposition that he knows of no reason why any inmates would have wanted to harm him. He was unaware of any threats that any inmate had ever made to him or about him. He had never been assaulted before while in SCDC and did not feel threatened by any inmates. In short, there was no history of threats to him that he was aware of. *See*, Plaintiff's Dep., pp. 36-37.

The Plaintiff filed a Complaint on June 15, 2021, which the Defendants removed to Federal Court. The Plaintiff has alleged two causes of action pursuant to 42 U.S.C. § 1983 against the individual Defendants for alleged violations of his Eighth Amendment rights. The Plaintiff has also brought a state tort claim for negligence and gross negligence against the Defendant SCDC.

The Plaintiff has sued Wayne McCabe who was a Regional Director for SCDC at the time but is now retired. Kershaw Correctional Institution was without a warden at that time, and McCabe was serving as the interim warden. The Plaintiff has also sued Kenneth Nelson who he mistakenly identifies as the warden at the time of the incident, but Nelson did not start in that

position until later after the Plaintiff was transferred to another facility. Lastly, the Plaintiff has sued Kevin Ford and Joseph Canning, both of whom were Associate Wardens at the time. The Plaintiff has sued for monetary relief only.

The parties have now completed discovery. In addition, the Plaintiff's deadline for naming expert witnesses, including medical experts and corrections experts, expired on December 7, 2021, and no expert witnesses were named. (Dkt. #39). The Defendants SCDC, McCabe, Nelson, Ford, and Canning move for summary judgment as to all claims alleged.

## **SUMMARY JUDGMENT STANDARD**

In deciding a summary judgment motion, this Court must determine whether there exists a genuine issue of material fact. *See*, Rule 56, FRCP. Under Rule 56(c), FRCP, a party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. However, "Rule 56 does not require the moving party to *negate* the elements of the nonmoving party's case." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990). (Emphasis in original). In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court found "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323. (Emphasis in original).

In *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390 (4th Cir. 1994), the Fourth Circuit Court of Appeals explained that "the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." 33 F.3d at 393. "[T]he burden on the

3

moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

The summary judgment inquiry "scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). "[T]he summary judgment procedure allows the court to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial." *Id*. In fact, the Supreme Court in *Celotex* recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." 477 U.S. at 327.

Under the summary judgment standard, "the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion." *Taylor v. Lowe's Home Centers, LLC,* 2018 WL 1431560, *2 (D.S.C. 2018). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Id*. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

## DISCUSSION

### I.     Federal Section 1983 Claims

#### A.     No Personal Participation

The Plaintiff's Complaint includes two causes of action brought pursuant to § 1983 which purport to allege a myriad of Eighth Amendment claims. The Plaintiff has not supported those numerous allegations and cannot demonstrate the critical element of proximate cause for each such allegation. In effect, based on the factual allegations actually included in the Complaint, the Plaintiff has alleged harm arising from an inmate-on-inmate assault occurring on June 18, 2018. All other allegations asserted in the First Cause of Action should be dismissed.[1]

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that a claim based on the doctrine of respondeat superior does not give rise to a Section 1983 claim. In other words, it is clear that the personal participation of a defendant is a necessary element of a §1983 claim against government officials such as the Defendants Willie Davis and Gary Lane. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

---

[1] By way of example, the Plaintiff has offered no evidence in support of his allegations regarding security understaffing, control of contraband and weapons, deficiencies in training, and the like. The Plaintiff has not identified an expert witness in corrections to opine on these subject areas and, most importantly, to establish a causal link to the harm claimed by the Plaintiff.

5

The Plaintiff has not pled nor presented evidence of any specific conduct or personal participation by the Defendants McCabe, Nelson, Ford, and Canning. In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Supreme Court clarified the pleading requirements under Rule 8(a)(2), FRCP. The Supreme Court explained that "the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 129 S.Ct. at 1949. The Supreme Court recognized that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 129 S.Ct. at 1250. Importantly, the Supreme Court held that a complaint is not sufficient "if it tenders naked assertions devoid of further factual enhancement." 129 S.Ct. at 1249. Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, in focusing on the allegations for which there is a factual predicate pled, the Plaintiff has not alleged nor presented evidence to demonstrate personal participation by the Defendants McCabe, Nelson, Ford, and Canning.

### B.     Failure to Protect Claim

To establish a failure-to-protect claim under the Eighth Amendment to the United States Constitution, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. *Id.* A prison official is

deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  511 U.S. at 847.  To succeed under this standard on a failure-to-protect claim, "[t]he plaintiff ... must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that the plaintiff complained to prison officials about a *specific* threat to his safety.  In other words, the defendants had to know that there was a substantial risk that those who attacked [the plaintiff] would do so, yet failed to take any action."  *Miller v. Turner*, 26 Fed. Appx. 560, 563 (7th Cir. 2001).  (Emphasis in original).  Additionally, "merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a Constitutional violation."  *Lewis v. Eagleton*, 2010 WL 755636, *9 (D.S.C. 2010).

Thus, in the case at bar, the Plaintiff must present evidence that each of the individual Defendants had a sufficiently culpable state of mind and that each was deliberately indifferent, meaning that the official "knows of and disregards an excessive risk to inmate health or safety," such that he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer,* 511 U.S. at 837.  Unless a prison official actually makes this inference, he is not deliberately indifferent.  *Id.*

While the Plaintiff satisfies the first prong of the cause of action by demonstrating injury resulting from the assault by the four or five assailants, he cannot present evidence to support a claim that any of these individual Defendants were deliberately indifferent to his health or safety.  Importantly, the Plaintiff could not identify his assailants.  *See*, Plaintiff's Dep., pp. 31-33.  He testified that he was unaware of any threats to his safety.  *See*, Plaintiff's Dep., pp. 37-38.  He did not know of any inmates at Kershaw Correctional Institution that had problems with him.  *See*, Plaintiff's Dep., p. 37:6-11.  He could not recall any previous occasion where an inmate had

7

threatened him.  *See*, Plaintiff's Dep., p. 37:21-25.  In fact, in his deposition, the Plaintiff proclaimed that "I ain't have no problems with inmates."  *See*, Plaintiff's Dep., p. 43:18-19.

In short, if the Plaintiff did not know that any inmates posed a threat to him, then he cannot show that he had made any of the individual Defendants aware of a threat and they failed to take the necessary action to protect him.  Additionally, the Plaintiff testified that he could not recall filing any grievance prior to June 18, 2018, complaining of any threats to his safety, whether by inmates or correctional staff.  *See*, Plaintiff's Dep., pp. 51:18 – 52:1.  Likewise, the Plaintiff admits he made no requests for protective custody or to be separated from any inmates.  *See*, Plaintiff's Dep., p. 52:2-10.

### 1. Kenneth Nelson

In his Complaint, the Plaintiff alleged that the Defendant Kenneth Nelson was the warden at Kershaw Correctional Institution on June 18, 2018.  The Plaintiff is mistaken.  On that date, the warden position at Kershaw Correctional Institution was open.  The Defendant Nelson became the warden at Kershaw Correctional Institution on October 8, 2018; however, by that date, the Plaintiff has been transferred to Trenton Correctional Institution.  In his deposition, the Plaintiff could not even identify Warden Nelson stating that he "sounds like a country singer to me."  *See*, Cannon Dep., pp. 43:25 to 44:12.  As a result, the Plaintiff cannot show that the Defendant Nelson had any responsibilities for Kershaw Correctional Institution on the date of assault, June 18, 2018, including any responsibilities to protect the Plaintiff.  The Defendant Nelson should be dismissed from this action.

### 2. Wayne McCabe

The Defendant Wayne McCabe is now retired from SCDC.  In June 2018, McCabe was serving as a Regional Director with SCDC.  In his deposition, Willie Davis, who is currently a

8

Regional Director, testified that the warden position at Kershaw Correctional Institution was open on June 18, 2018. As the Regional Director, McCabe would have been acting in that role. *See*, Davis Dep., pp. 12-14. The Plaintiff has not alleged nor demonstrated that the Defendant McCabe had any personal involvement in the events leading up to the assault occurring on June 18, 2018. The Plaintiff recalled speaking with McCabe shortly before the June 18, 2018 incident while he was making rounds. He told McCabe that he wanted to be moved from Hickory unit back to Sycamore unit, which he preferred. As for the reason he told McCabe why he wanted to be moved, the Plaintiff testified: "Other than just not liking the dorm, I can't remember, sir." *See*, Plaintiff's Dep., p. 46:6-12. The Plaintiff recalled speaking to McCabe on other occasions, but he did not recall what those conversations were about. *See*, Plaintiff's Dep., pp. 46:15 – 47:18.

In sum, the Plaintiff has not alleged nor demonstrated that the Defendant McCabe had any personal involvement in the events leading up to the assault occurring on June 18, 2018. No requests for protective custody were made to McCabe. Moreover, the Plaintiff did not communicate any safety threats to McCabe, and there is no evidence that McCabe was aware of and failed to act on any specific threats to the Plaintiff's safety. Consequently, the Defendant McCabe is entitled to summary judgment.

### 3. Kevin Ford

Kevin Ford was an Associate Warden at Kershaw Correctional Institution in June 2018. The Plaintiff has not alleged nor demonstrated that the Defendant Ford had any personal involvement in the events leading up to the assault. Ford was not working that day. During his deposition, the Plaintiff did testify to making complaints to the Defendant Ford – not about inmates but about officers. He was unable to recall any specific complaints, other than

9

complaining about being in the Hickory dorm and about the food. *See*, Plaintiff's Dep., pp. 39:24 – 41:15.

In sum, the Plaintiff has not alleged nor demonstrated that the Defendant Ford had any personal involvement in the events leading up to the assault occurring on June 18, 2018. No requests for protective custody were made to Ford. Moreover, the Plaintiff did not communicate any safety threats to Ford, and there is no evidence that Ford was aware of and failed to act on any specific threats to the Plaintiff's safety. Consequently, the Defendant Ford is entitled to summary judgment.

### 4. Joseph Canning

Joseph Canning was an Associate Warden at Kershaw Correctional Institution in June 2018. The Plaintiff has not alleged nor demonstrated that the Defendant Canning had any personal involvement in the events leading up to the assault. During his deposition, the Plaintiff did testify to making complaints to the Defendant Canning but never about other inmates. *See*, Plaintiff's Dep., pp. 41:16-24; 43:16-19. The Plaintiff recalled complaining to Canning about "not wanting to be in Hickory dorm and wanting to go back to my dorm in Sycamore." *See*, Plaintiff's Dep., p. 42:3-6.

In sum, the Plaintiff has not alleged nor demonstrated that the Defendant Canning had any personal involvement in the events leading up to the assault occurring on June 18, 2018. No requests for protective custody were made to Canning. Moreover, the Plaintiff did not communicate any safety threats to Canning, and there is no evidence that Canning was aware of and failed to act on any specific threats to the Plaintiff's safety. Consequently, the Defendant Canning is entitled to summary judgment.

### C. Deliberate Indifference in Training and Supervision

The Plaintiff's Second Cause of Action alleges deliberate indifference in training by the named Defendants. To allege a claim for failure-to-train, there must be deliberate indifference by the defendant supervisor. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference may be found where "the need for more or different training is so obvious, and the [failure to train is] likely to result in the violation of constitutional rights." 489 U.S. at 390. "To impose supervisory liability under § 1983 for failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) the failure to train actually caused the subordinates to violate the plaintiff's rights." *Hubbard v. Byars*, 2015 WL 337642, *12 (D.S.C. 2015). "A section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).

In the case at bar, the Plaintiff has not presented evidence to support his § 1983 failure-to-train claim. The Plaintiff has not identified any specific subordinate who violated his constitutional rights. Moreover, the Plaintiff has not shown that any specific subordinate's training was deficient in any respect or that any deficiency in training was the proximate cause for the subordinate to violate the Plaintiff's constitutional rights. Therefore, for each of these reasons, the individual Defendants are entitled to summary judgment with respect to Plaintiff's failure-to-train claim.

Likewise, in the event the Court construes the Plaintiff's Second Cause of Action as a supervisory liability claim, the individual Defendants are entitled to summary judgment. As the Fourth Circuit has recognized, there are very limited circumstances where supervisors can be found liable "for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). In order to establish this exception to the general rule of no liability, the Plaintiff must be able to establish that the Defendant supervisor (1) was actually or constructively aware of a risk of constitutional injury, (2) was deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See, Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014), *citing Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Importantly, a plaintiff attempting to show supervisory liability "assumes a heavy burden of proof." *Slakan*, 737 F.2d at 373. In fact, a plaintiff will not be able to make the necessary showing "by pointing to a single incident or isolated incidents." *Id.* Instead, the Plaintiff has to show the "supervisor's continued inaction in the face of documented widespread abuses." *Id.* In the present case, the Plaintiff has made no showing of these three elements against any of the individual Defendants.

### D.     *Harlow* **Qualified Immunity**

The United States Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), set forth objective standards for the utilization of the qualified immunity defense and gave specific benchmarks to the judiciary in determining when to protect public officials from undue interference with the exercise of their official duties. In setting forth its guidelines, the Supreme Court ruled that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory

or constitutional right of which a reasonable person should have known." 457 U.S. at 818. The Supreme Court further held that "[r]eliance on the objective reasonableness of an official's conduct is measured by reference to clearly established law and should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id*.

Subsequently, the Supreme Court held in *Anderson v. Creighton*, 483 U.S. 635 (1987), that a court must look for the "'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." 483 U.S. at 639. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. ... [This] is to say that in the light of preexisting law the unlawfulness must be apparent." 483 U.S. at 640. Importantly, qualified immunity has been found to protect corrections officials from "bad guesses in gray areas," and it ensures that they may be held personally liable only "for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In determining whether an individual defendant is entitled to qualified immunity, this Court engages in a two-step process as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). The Court must first determine "whether a constitutional right would have been violated on the facts alleged." 533 U.S. at 200. If the facts viewed in a light most favorable to the plaintiff do not establish a constitutional violation, the inquiry ends, and the plaintiff cannot prevail. *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003).

13

The first prong of the qualified immunity analysis has been addressed above. In the event the Court finds no Eighth Amendment violation, the Court need not proceed to the second prong of the analysis. However, if the Court does reach this second prong, the Defendants Nelson, McCabe, Ford, and Canning submit that their conduct was objectively reasonable in light of clearly established law. More specifically, there is no controlling authority from the United States Supreme Court or the Fourth Circuit that would place objectively reasonable officials in the positions held by these Defendants on notice that their conduct based on the Plaintiff's allegations was violative of his Eighth Amendment rights.

As indicated above, qualified immunity protects governmental officials from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines. *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992). Certainly no "bright lines" were crossed by any of the Defendants Nelson, McCabe, Ford, and Canning. For that reason, they are entitled at a minimum to qualified immunity.

**II.     State Law Claims**

In his Third Cause of Action, the Plaintiff alleges a state law tort claim for negligence and gross negligence against the Defendant SCDC. The Plaintiff alleges that one or more unnamed correctional officers deliberately caused the inmate-on-inmate assault to occur. The Plaintiff alleges that the Hickory unit was on statewide lockdown and thus the inmates should not have had access to each other. The Plaintiff alleges that the only way that the assailants obtained access to the Plaintiff is by the officer in the control room deliberately opening his cell door to allow the assailants to enter and attack him.

The Plaintiff testified that he felt more threatened by officers than other inmates. *See*, Plaintiff's Dep., pp. 37:21 – 38:3. The Plaintiff was unable to identify the officer by name, but he did describe issues with the officer because the Plaintiff was "obnoxious" and was "always complain[ing] to him about something." *See*, Plaintiff's Dep., pp. 71-72. The Plaintiff testified that he believes the cell door was opened intentionally. *See*, Plaintiff's Dep., p. 74: 5-7. He added that "[]it ain't no other kind of way you could open it. The CO would have had to have opened it." *See*, Plaintiff's Dep., p. 74:9-11. The Plaintiff later expressed his belief that he was "targeted" "[b]ecause I has so many complaint to these officers, like, and I didn't like the way they did stuff." *See*, Plaintiff's Dep., p. 78:7-17. Given the nature of the Plaintiff's allegations, as he describes in his deposition testimony, the Defendant SCDC is entitled to summary judgment on the gross negligence claim.

The Plaintiff's Third Cause of Action is governed by the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq*. Based on S.C. Code Ann. § 15-78-60(25) of the Tort Claims Act, the Defendant SCDC is not liable for ordinary or simple negligence, and as a result, the Plaintiff is required to prove gross negligence by the SCDC employees in order to prevail.[2] Under South Carolina law, "[n]egligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care." *Clyburn v. Sumter County School District No. 17*, 317 S.C. 50, 451 S.E.2d 885, 887 (1994). However, the Plaintiff has alleged intentional or deliberate conduct by SCDC correctional officers; he has not alleged negligent or grossly negligent acts. He contends that the unnamed officers disliked him personally because he was obnoxious and complained frequently,

---

[2] The Plaintiff's claim for simple negligence should be dismissed. The Defendant SCDC is entitled to sovereign immunity under S.C. Code Ann. § 15-78-60(25) for any allegations of simple or ordinary negligence. That is clearly established in the South Carolina Tort Claims Act and the case law and, upon information and belief, is not disputed by the Plaintiff.

and thus, the officer deliberately allowed him to be assaulted by the inmates who attacked him. The Defendant SCDC denies those allegations, but even if assumed to be true, SCDC is entitled to summary judgment.

Importantly, gross negligence does not per se include intentional conduct. South Carolina law recognizes that intentional torts may not be committed in a negligent manner. In other words, negligence and battery are mutually exclusive; there is no such cause of action for a negligent assault and battery. *See*, *State Farm Fire & Cas. Co. v. Barrett*, 340 S.C. 1, 530 S.E.2d 132, 137 (Ct. App. 2000) (recognizing that "an intentional tort … by definition cannot be committed in a negligent manner"); *Restatement (Second) of Torts*, § 262, cmt. d ("The definition of negligence given in this Section includes only such conduct as creates liability for the reason that it involves a risk and not a certainty of invading the interest of another. It therefore excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or of a third person"). Moreover, in *Gist v. Berkeley County Sheriff's Dept.*, 336 S.C. 611, 521 S.E.2d 163 (Ct. App. 1999), the South Carolina Court of Appeals recognized that "[f]alse imprisonment is an intentional tort; negligence is not an element." 521 S.E.2d at 167. Accordingly, the Court concluded that "the gross negligence standard is not applicable" to claims for intentional torts. *Id*.

Consequently, if the unnamed officers perpetrated, allowed, and/or facilitated the assault of the Plaintiff to occur, which is what he alleges, that is not gross negligence. That is an intentional act for the specific purpose to cause the Plaintiff harm. SCDC cannot be held liable for such conduct, if that indeed is what occurred. Notably, given the Plaintiff's theory of deliberate conduct by the unnamed correctional officers to allow the assailants to attack the Plaintiff, the proper state law claim would be assault and battery or some other intentional tort; however, the Plaintiff did not

16

bring such a claim. Those allegations as asserted by the Plaintiff certainly do not give rise to a claim for gross negligence.

Moreover, given those allegations by the Plaintiff, the Defendant SCDC would also be entitled to immunity under S.C. Code Ann. § 15-78-60(17), which provides that a "governmental entity is not liable for a loss resulting from … employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-60(17). The Plaintiff's allegations charge the unnamed correctional officers with acts constituting the "intent to harm" as well as quite frankly criminal conduct. The Defendant SCDC cannot be held liable for such deliberate or intentional conduct, and as a result, SCDC is entitled to summary judgment on the state law allegations.

## **CONCLUSION**

Based on the foregoing discussion, the Defendants South Carolina Department of Corrections, Wayne McCabe, Kenneth Nelson, Joseph Canning, III, and Kevin Ford respectfully request that the Court grant their motion for summary judgment and dismiss the Plaintiff's Complaint with prejudice.

                                    Respectfully submitted,

                                    LINDEMANN & DAVIS, P.A.

BY: *s/ Andrew F. Lindemann*
      ANDREW F. LINDEMANN        #5070
      5 Calendar Court, Suite 202
      Post Office Box 6923
      Columbia, South Carolina 29260
      (803) 881-8920
      Email: andrew@ldlawsc.com

*Counsel for Defendants South Carolina Department of Corrections, McCabe, Nelson, Canning, and Ford*

April 4, 2022